IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANIMAL LEGAL DEFENSE FUND, )
 )
 )
 )
   Plaintiff, )
 ) Civil Action 2:19-40
   vs. )
 )
KIMBERLY ANN LUCAS, d/b/a )
FARMERS' INN, )
 )
 )
   Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Animal Legal Defense Fund ("ALDF") has filed a Motion for Sanctions for Spoliation of Evidence (ECF No. 199). A previous motion for sanctions (ECF No. 127) regarding the same issues was denied without prejudice in a January 6, 2021 Order (ECF No. 154). Defendant Kimberly Ann Lucas, d/b/a Farmers' Inn ("Farmers' Inn") opposed the original motion and similarly opposes ALDF's renewed motion (ECF Nos. 136; 211).

ALDF's motion relates to Russell, a black leopard that was one of the animals housed at Farmers' Inn. ALDF claims that by euthanizing Russell without notice and delaying the disclosure of this information, Farmers' Inn's conduct represents spoliation and requires the imposition of sanctions. Farmers' Inn denies that sanctions are warranted.

For the reasons that follow, ALDF's motion will be granted.

I. **Relevant Background**

ALDF contends in this action that Farmers' Inn neglects and mistreats the animals under its care and control. Among its concerns are the deaths of multiple animals while housed at Farmers' Inn and what it contends to be absent or inadequate veterinary care. In both its original Complaint (ECF No. 1) and Amended Complaint (ECF No. 37), ALDF asserts that Russell, an

endangered species, is one of these mistreated animals.  ALDF alleges, among other things, that "Russell's physical and psychological harm and harassment caused by the Farmers' Inn will only exacerbate over time if not remedied by his prompt relocation to a proper sanctuary." (ECF No. 37 at ¶ 36.)

The issue of spoliation was first raised by ALDF in a motion filed in November 2020.  As stated in ALDF's original motion, Russell was euthanized by a veterinarian on June 9, 2020.  No necropsy was performed.  Prior to his death, ALDF had twice requested that Farmers' Inn provide ALDF with notice of any animal's death within twenty-four hours so that it could arrange for post-mortem testing.  Farmers' Inn did not respond to either request.  ALDF was not notified of Russell's death until over a month later and by then, a necropsy could not be performed.  ALDF contended that Farmers' Inn's failure to provide notice and an opportunity to conduct post-mortem testing represents intentional spoliation.

In opposing the original motion, Farmers' Inn denied that its conduct was sanctionable.  It noted that after ALDF was notified in June 2019 of the euthanasia of Tundra, a wolf in the possession of Farmers' Inn, it took no action and did not claim that spoliation had occurred or seek any remedy from the court.[1]  While it did not explain its failure to respond to ALDF's requests for notice of an animal's death, Farmers' Inn noted that ALDF had cited no authority or rule that would require immediate notice and further, had never requested the opportunity to inspect any of the animals at Farmers' Inn. It also asserted that ALDF's motion was premature and should not be addressed before there was a complete record.[2]

---

[1] Tundra was also referenced in the Complaint and Amended Complaint as an animal that was "suffering physically and psychologically."

[2] Farmers' Inn referenced the "immense level of factual detail—and perhaps even expert testimony" that the Court would have to consider in order to determine if spoliation had occurred. (ECF No. 136 at 2, fn.1).

In denying ALDF's motion for sanctions without prejudice, the Court permitted ALDF to renew its motion for sanctions after the full development of the record, including the exchange of expert reports and the completion of discovery.  (ECF No. 154 at 4.)  The Court also established a notification procedure upon the death of any animal at Farmers' Inn.

Thereafter, the parties continued to engage in discovery, including the deposition of Dr. Wise, the veterinarian used by Farmers' Inn who euthanized Russell. According to ALDF, Dr. Wise testified that he was unable to identify the underlying cause of Russell's ongoing health conditions. In a letter to the Pennsylvania Game Commission, Farmers' Inn cited Russell's age and "health conditions" as the reasons for his euthanasia, and Dr. Wise's records noted Russell's "declining condition."

ALDF later submitted expert reports from Valerie Johnson, DVM DACVECC PhD, and Laura Boehler, DVM. Dr. Johnson's report includes her opinions about the lack of proper medical care and husbandry for the species housed at Farmers' Inn. With respect to Russell, she opines, in part, that:

> Russell was noted to be not eating and lethargic for weeks prior to his euthanasia but veterinary care was not provided until he was euthanized due to his age. Yet in captivity leopards routinely live until their late teens and have been noted to live into their early 20s with proper veterinary care and preventative medicine. I believe Russell was thought to be at least 12 or 13 years of age. It is not known if he had a treatable condition as diagnostics were never performed nor was a necropsy. Necropsy is important for multiple reasons. Determining the cause of death is particularly important at a facility housing multiple species in close quarters as infectious disease can be transmitted to other animals and it is important to know if there is a risk. It is also important in species that can have zoonotic diseases that can be transmitted to humans, for example covid in large felids, rabies in any mammal and a number of diseases in nonhuman primates. Even in geriatric animals a necropsy can help determine the cause of disease that might help to identify clinical signs before the animal died of old age or was euthanized. Ms. Lucas stated that a necropsy would not have determined the cause of Russell's illness. As Ms. Lucas has no medical training of any kind I am not sure how she reached that incorrect conclusion. Occasionally a necropsy is performed that does not identify the cause of death. This is an unusual occurrence and I am confident that an animal

3

who had been losing his bowels for a year, drinking excessively for an unknown
period of time and not eating and vomiting for several weeks, such as Russell, that
a cause of death could be determined.

(ECF No. 183-1, p. 6.)  Dr. Boehler also provides opinions about the importance of necropsies to

rule out infectious disease and to provide insight into treatment courses and disease processes, as

well as the cause of death and prevention of recurrence.  (ECF No. 184-3, pp. 15-16.)

Farmers' Inn submitted an expert report from Michael Briggs, DVM, MS. Dr. Briggs did

not render an opinion about the cause of Russell's death (nor, according to Farmers' Inn, was he

asked to do so). He testified that given the lack of documentation and diagnostics, he could not

specifically address if Russell's treatment was correct.  (ECF No. 199-3, Briggs Dep., p. 282-283.)

He also testified that he would have done more diagnostics to see if the treatments that Russell

received were warranted. (*Id*.) He also acknowledged that a necropsy is an important source of

information about an animal's health. (*Id.* at 326.)

In its renewed motion for sanctions, ALDF asserts that Russell's destruction eliminated a

primary means to determine the extent and causes of his chronic health issues that existed

throughout his eleven years at Farmers' Inn. ALDF alleges that Farmers' Inn never determined the

cause of these issues, and due to poor recordkeeping, inadequate health care and the lack of a

necropsy, it is not possible to determine the full extent of Russell's health issues. Moreover, a

necropsy not only would have provided more information both about the cause of Russell's known

health conditions, but also whether he suffered from unknown and untreated health issues.  Thus,

given the relevance of Russell's condition, its requests for notice of animal deaths and Farmers'

Inn's acknowledgement that a necropsy yields important information, ALDF contends that it is

entitled to an adverse inference that Russell's euthanasia without notice and an opportunity to

conduct a necropsy was "an intentional act to obfuscate Farmers' Inn's provision of inadequate care to Russell." (ECF No. 199 at 12.)

In its opposition to ALDF's renewed motion for sanctions, Farmers' Inn argues that there are no new facts that justify "reversal" of the Court's earlier denial of ALDF's motion without prejudice. It notes that ALDF has failed to proffer any evidence of bad faith or intentional obfuscation. ALDF did not seek an inspection during Russell's life despite its allegations of mistreatment or seek court intervention before his death to preserve his remains so that a necropsy could be performed. Moreover, it states, despite deposing Ms. Lucas, ALDF elicited no evidence of bad faith; rather, she testified that the decision to euthanize Russell was at Dr. Wise's recommendation and to end his suffering. According to Ms. Lucas, the decision not to conduct a necropsy was because "there was nothing to learn" and Farmers' Inn did not intend to acquire another similar animal.

Thus, Farmers' Inn concludes that there is no basis to revisit the Court's prior decision and ALDF has failed to meet its burden of proof that sanctions are warranted.

## II.    Standard of Review

Spoliation of evidence has occurred if: (1) the evidence was in the opposing party's control; (2) the evidence is relevant to the moving party's claims; (3) there has been actual, intentional suppression or withholding of evidence in bad faith; and (4) the duty to preserve the evidence was reasonably foreseeable to the opposing party. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

As the party seeking sanctions for spoliation, ALDF bears the burden of proof by a preponderance of the evidence that spoliation occurred. *Universal Underwriters Inc. Co. v. Dedicated Logistics, Inc.*, Civ. A No. 11-1153, 2014 WL 7335668, at *4 (W.D. Pa. Dec. 19, 2014). If a party proves that spoliation occurred, the court may sanction the offending party. *Schid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78-79 (3d Cir. 1994).

III.     **Discussion**

As an initial matter, the Court disagrees with the position taken by Farmers' Inn that the Court's denial of ALDF's first motion for sanctions is the "law of the case" and should not be reconsidered.  As the January 6, 2021 Order makes crystal clear, the denial of ALDF's motion was without prejudice and permission was expressly granted to renew a motion for sanctions "after the full development of the record."  Indeed, in its opposition to the original motion for sanctions, Farmers' Inn took the position that the development of an "immense level of factual detail" would be necessary in order to determine if there was an intentional destruction of evidence.

Since the denial of the original motion, substantial discovery has taken place, including the depositions of Ms. Lucas and Dr. Wise, as well as the exchange of expert reports and completion of expert depositions.  Potentially relevant information to the resolution of ALDF's pending motion was discovered as part of this process.  Thus, even if one were to ignore the Court's explicit ruling that ALDF could renew its motion after a full development of the record, Farmers' Inn's contention that there is no basis to "revisit" the prior ruling is unavailing because new evidence is, in fact, available.

The Court now turns to an evaluation of the merits of ALDF's renewed motion.  In this case, the first two elements of an analysis of spoliation are not in dispute. Russell was in the possession and control of Farmers' Inn at all relevant times, and as outlined in the Complaint,

Amended Complaint and ALDF's expert report, his condition, care and treatment while at Farmers' Inn are unmistakably relevant to ALDF's claims.

The Court also finds that the duty to preserve Russell's remains was reasonably foreseeable. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Bull*, 665 F.3d at 77-78 (quoting *Micron Tech. Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). ALDF alleges in its Amended Complaint that physical harm to Russell would increase over time if he was not relocated to another facility. Accordingly, Russell's health and condition have been at issue since the inception of this case. While Farmers' Inn attempts to rely on the fact that ALDF had not requested examinations of any of the animals or taken issue with the previous death of another animal, it is undisputed that twice in the two months before Russell was euthanized, ALDF asked Farmers' Inn to promptly notify it when an animal died so that it had the option to conduct a necropsy. Farmers' Inn does not dispute that these requests were made, that they were received or that it failed to respond in any way.

It is true that ALDF did not ask the Court to establish a procedure for notice of an animal's death before Russell was euthanized, nor did it seek a necropsy with respect to the previous death of Tundra, the wolf. Neither of these facts are dispositive of the issue of foreseeability, however. Simply put, Farmers' Inn was on notice that Russell's condition and treatment were directly at issue and that ALDF wanted immediate notice of all animal deaths, which would include Russell's, so that ALDF could determine if it wanted to conduct a necropsy. Thus, the duty to preserve his remains was foreseeable.

At the same time, a finding that a party has a duty to preserve evidence does not mandate a finding of spoliation unless the destruction was intentional and in bad faith.  Here, as both parties appear to recognize, the central issue is whether ALDF has met its burden.

In *Bull,* the United States Court of Appeals for the Third Circuit stated:

In *Brewer* we discussed the connection between a finding of sanctionable spoliation and a ruling on bad faith, stating the following:

> For the [spoliation] rule to apply . . . it must appear that there has been an actual suppression or withholding of the evidence.  *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.  See generally* 31A C.J.S. [Evidence] § 156(2); 29 [AM. JUR. 2d Evidence] § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").

*Brewer,* 72 F.3d at 334 (emphasis added).  Therefore, a finding of bad faith is pivotal to a spoliation determination.  This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. Withholding requires intent.

665 F.3d at 79 (italicized emphasis in original).

Thus, it must be determined if ALDF has met its burden to show that the destruction of Russell was intentional and with the specific intent of withholding potentially adverse evidence from ALDF.

As noted in *Charcalla v. Goodyear Tire & Rubber Co.*, "district courts within the Third Circuit have routinely distinguished between situations where 'the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth,' and those where 'the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.'"  *Charcalla v. Goodyear Tire & Rubber Co.*, Civ.

A. No. 13-204 Erie, 2017 WL 2720278, at *3 (W.D. Pa. Jun. 23, 2017) (citing *Brewer*, 72 F.3d at 334). *See, e.g., Bozic v. City of Washington*, 912 F. Supp. 2d 257, 270 (W.D. Pa. 2012) (noting that most cases applying *Bull* have declined to find spoliation where the conduct was merely negligent or the evidence was lost or discarded in the ordinary course); *Micjan v. Wal-Mart Stores, Inc.*, Civ. A. No. 14-866, 2016 U.S. Dist. LEXIS 23173, at *28-29 (W.D. Pa. Feb. 25, 2016) (spoliation not found when no evidence that actions were deliberate attempt to impede a potential defense); *Punch v. Dollar Tree Stores, Inc.*, Civ. A. No. 12-154, 2017 U.S. Dist. LEXIS 23443, at *14-17 (W.D. Pa. Feb. 17, 2017) (same). *See also In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 579 (3d Cir. 2007) (denying spoliation inference in part because there was no evidence that the destroying party did so in order to prevent the adverse party from accessing the evidence).

As noted in *Wilson v. Saint-Gobain Universal Abrasives, Inc.*, "whether a party had reason to believe that the evidence in question would be required in litigation is governed by a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Wilson v. Saint-Gobain Universal Abrasives, Inc.*, Civ. A. No. 2:13-cv-1326, 2015 WL 1499477, at *11 (W.D. Pa. Apr. 1, 2015) (quoting *Bull*, 645 F.3d at 77-78) (citation omitted). *See also Capogrosso v. 30 River Court E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012) (finding spoliation where plaintiff knew that defendant wanted to inspect discarded evidence and that it was essential evidence in her lawsuit); *Bull*, 665 F.3d at 74 ("a District Court has discretion to draw inferences from the record on a party's intent."); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475-76 (E.D. Pa. 2020) ("Because courts are unable to 'examine [a party's] head' to 'confirm [whether they] acted in bad faith,' courts look to circumstantial evidence to determine intent.") (discussing Rule 37(e)).

Here, ALDF's original complaint stated that it was bringing claims under the Endangered Species Act. One of these claims specifically related to Russell and his physical condition and therefore, it cannot be reasonably disputed that Russell's health, condition and care are squarely at issue in this case. The destruction of Russell's body occurred more than a year after this action commenced. When he was euthanized and his body disposed of in June 2020, Farmers' Inn knew that ALDF had made requests in April 2020 and again in May of 2020 to be notified of any animal's death within twenty four hours so that it could determine if it wanted to arrange for an independent necropsy. Farmers' Inn neither disputed nor responded to these requests.

After Russell was euthanized and his body disposed of, Farmers' Inn did not notify ALDF of his death until more than a month later, at which time a necropsy would not be possible. Ms. Lucas testified that the decision to euthanize Russell was at Dr. Wise's recommendation and the decision not to conduct a necropsy was made because "we didn't feel that there was anything left to learn." Farmers' Inn does not explain why it failed to timely notify ALDF of Russell's death, let alone why its conclusion that it had "nothing left to learn" was in any way relevant to what ALDF may have learned if it had been promptly notified.

Notably, there are minimal records that describe Russell's health conditions or treatment during his life. Both parties' experts agreed that a necropsy is valuable in determining the cause of health issues. While Ms. Lucas stated that a necropsy would not have determined the cause of Russell's illness, Dr. Johnson, ALDF's expert veterinarian, disagreed and opined that a necropsy can help determine the cause of disease that might help to identify clinical signs before an animal dies of old age or is euthanized. Further, she expressed her opinion that Russell's cause of death could have been determined if a necropsy had been performed.

While it was within its prerogative to ignore the requests of ALDF in the absence of a court order mandating notice and to withhold notice of Russell's death for more than a month, Farmers' Inn cannot shield itself from sanctions simply because it decided that there nothing left **for it** to learn from a necropsy.  This is especially compelling since neither Ms. Lucas, Dr. Wise nor the parties' experts were able to reach any conclusions about the reasons for Russell's conditions or declining health.  Under these facts, ALDF had the right to make its own independent assessment of whether there was information to be learned through a necropsy that could be relevant to its claims.  The destruction of Russell's body foreclosed that possibility.

To be clear, it is not the decision by Farmers' Inn to euthanize Russell upon Dr. Wise's recommendation that is at issue.  Rather, it is its decision to discard his body while litigation is pending without notice to ALDF and armed with the knowledge that his condition was at issue and that ALDF wanted the right to examine his body.  Thus, the destruction of Russell's remains was not done inadvertently or negligently.  Russell's body was not lost or misplaced.  While the destruction of an unhealthy animal may be in the ordinary course in the absence of litigation or the threat of litigation, that is not the case here.  Since ALDF did not have access to Russell's remains, there is no other available means to obtain information or reach any conclusions about the cause and extent of Russell's underlying health conditions at the time of his death or what treatment, if any, should have been rendered during his lifetime.

For these reasons, the Court concludes that spoliation has occurred.

Upon a finding of spoliation, a court may sanction the offending party.  *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79(3d Cir. 1994).  In order to determine the appropriate sanction, a court must consider: (1) the degree of fault of the party who destroyed the evidence; (2) the degree of prejudice sustained by the injured party; and (3) whether there is a lesser sanction

that will avoid substantial unfairness to the aggrieved party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Bull*, 665 F.3d at 73 n.5 (quoting *Schmid*, 13 F.3d at 79). A court may impose any potential sanction, including dismissal of a claim or granting judgment in favor of a prejudiced party, suppression of evidence or an adverse inference. *Bull*, 665 F.3d at 73.

Sanctions are warranted here. Farmer's Inn deliberately discarded Russell despite knowing that his condition is at issue and that ALDF wanted to be notified before this occurred. As a result, ALDF has sustained significant prejudice because it is unable to develop conclusive evidence about the cause of his health issues. Upon consideration of all of the relevant factors in this case, the Court concludes that no lesser sanction than an adverse inference can remedy this spoliation and that a spoliation instruction to the jury is warranted.

Therefore, this 3rd day of September, 2021, ALDF's Motion for Sanctions for Spoliation of Evidence is GRANTED. An adverse instruction will be read to the jury. The precise language of the instruction will be determined at an appropriate time prior to trial.

BY THE COURT:

s/Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge

12