**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANIMAL LEGAL DEFENSE FUND,   )
             )
     Plaintiff,    )
             )
  vs.         )   Civil Action No. 2:19-40
             )
KIMBERLY ANN LUCAS d/b/a FARMERS' )
INN,            )
             )
     Defendant.   )

**<u>MEMORANDUM OPINION</u>**

Plaintiff Animal Legal Defense Fund ("ALDF") brings this action against Defendant Kimberly Ann Lucas d/b/a Farmers' Inn ("Farmers' Inn"), alleging that it fails to provide adequate husbandry and veterinary care to the exotic animals in its custody at its facility in Jefferson County, Pennsylvania. Specifically, ALDF alleges that Farmers' Inn's treatment of the animals constitutes a public nuisance under Pennsylvania law and that it has violated the Endangered Species Act, 16 U.S.C. §§ 1531-44 ("ESA") by unlawfully "taking" endangered species, unlawfully possessing protected species and unlawfully transporting endangered species in interstate commerce.

The parties filed cross-motions for partial summary judgment. On March 31, 2022, the Court filed a Memorandum Opinion and Order[1] that granted Farmers' Inn's motion insofar as it sought dismissal of ALDF's public nuisance claim and denied both motions in all other respects.

Pending before the Court is ALDF's motion for reconsideration or, in the alternative, for certification of an issue for interlocutory appeal (ECF No. 247). For the reasons below, the motion for reconsideration will be granted in part by reinstating the public nuisance claim and otherwise

---

[1] The parties have fully consented to jurisdiction by a magistrate judge.

will be denied.[2]

## I.     Relevant Procedural History

After commencing this action in January 2019, ALDF has since twice amended its Complaint. The operative complaint is the Supplemental Amended Complaint (ECF No. 155), which was filed on January 8, 2021.

On June 30, 2021, the parties filed cross-motions for partial summary judgment. Farmers' Inn sought judgment with respect to ALDF's public nuisance claim (Count IV of the Supplemental Amended Complaint) as well as ALDF's ESA claim. ALDF sought summary judgment with respect to its public nuisance claim and its claim that Farmers' Inn engaged in an unlawful taking of protected animals.

The Court issued a Memorandum Opinion (ECF No. 240) and Order (ECF No. 241) on March 31, 2022 that granted Farmers' Inn's motion with respect to ALDF's public nuisance claim and denied its motion and ALDF's cross motion in all other respects. ALDF then filed the present motion for reconsideration (ECF No. 247), which has been fully briefed (ECF Nos. 248, 250).

## II.    Standard of Review

Farmers' Inn argues that a party seeking reconsideration must show at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). *See also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

---

[2] Given its ruling, the Court need not reach the alternative request for certification for interlocutory appeal.

As several judges of this Court have observed, however, this standard applies to a motion for reconsideration of a final order or judgment. A motion for reconsideration of an interlocutory order, such as a grant or denial of partial summary judgment, is governed by Rule 54(b), which states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Thus, "[t]he court may permit reconsideration whenever 'consonant with justice to do so.'" *Nyamekye v. Mitsubishi Elec. Power Prod., Inc.*, 2018 WL 3933504, at *3 (W.D. Pa. Aug. 16, 2018) (Conti, C.J.) (quoting *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016)). *See also United States v. Petty*, 2022 WL 3447316, at *1 (W.D. Pa. Aug. 17, 2022) (Ranjan, J.); *Gorgonzola v. Ahuja*, 2022 WL 796922, at *11 (W.D. Pa. Mar. 16, 2022) (Hornak, C.J.); *Miller v. Steam Generating Team, LLC,* 2020 WL 1821698, at *1 (W.D. Pa. Apr. 10, 2020) (Colville, J.); *Hayes v. Tice*, 2020 WL 1450271, at *3 (W.D. Pa. Mar. 25, 2020) (Kelly, M.J.). *See also State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 & n.14 (3d Cir. 2016) ("the District Court has the inherent power to reconsider prior interlocutory orders" and to "reconsider them when it is consonant with justice to do so."); *Jackson v. O'Brien*, 2021 WL 3174687, at *1 (W.D. Pa. July 27, 2021) (Lanzillo, M.J.) ("A motion for reconsideration is also appropriate in instances where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.")

Nevertheless, "[t]he Rule 54(b) standard, while less rigorous, is not without teeth [and] a movant must still establish good cause for why the court should revisit its prior decision." *Michalek*

3

*v. Nationwide Mut. Fire Ins. Co.*, 2022 WL 1782503, at *2 (W.D. Pa. June 1, 2022).

    A.  <u>Public Nuisance Claim</u>

    ALDF contends that the Court erred in concluding that it could not maintain a claim of public nuisance under Pennsylvania law regarding the conditions to which the animals are subjected at Farmers' Inn. The Court concluded that, although Pennsylvania may recognize a public nuisance claim based upon the violation of an animal cruelty statute, ALDF could not maintain such a claim in this case for several reasons: its members were business invitees to Farmers' Inn; ALDF had not cited to any case law that recognizes a private cause of action based on violations of the Pennsylvania Game Code; and ALDF failed to demonstrate that its members suffered "a harm of greater magnitude and of a different kind than that which the general public suffered." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 221 (3d Cir. 2020) (citation omitted).

    ALDF argues that the Court committed several errors. First, ALDF notes that the business invitees issue addressed by the Court was an argument that was not raised by either party and was decided without allowing ALDF to brief the issue. ALDF further contends that the case on which the Court relied did not turn on the issue of whether the plaintiff was classified as a business invitee. Farmers' Inn responds that the Court properly conducted its own research and reached the appropriate result.

    ALDF is correct that the Court erred by first raising and then deciding an issue without notice or an opportunity to respond. See Fed. R. Civ. P. 56(f) ("*After giving notice and a reasonable time to respond*, the court may … grant the motion on grounds not raised by a party.") This was an error of law. *See Saroza v. Lyons Doughty & Veldhuis, P.C.*, 773 F. App'x 665, 667 (3d Cir. 2019); *Citizens for Pennsylvania's Future v. Pittsburgh Water & Sewer Auth.*, 620 F. App'x 96, 99 & n.15 (3d Cir. 2015) (district court erred in granting summary judgment on a ground

4

not raised by the parties without providing notice and a reasonable time to respond, and court further erred in denying the plaintiff's motion for reconsideration on this issue). Moreover, it is "consonant with justice" to rectify this error.

ALDF also correctly pointed out that the sole case on which the Court relied was not based on the plaintiff's status as a business invitee. Rather, the case turned on the issue of whether the plaintiff suffered a special injury. *See Ricchiuti v. Home Depot, Inc.*, 412 F. Supp. 2d 456, 460 (E.D. Pa. 2005) (dismissing a public nuisance claim based on a pothole in Home Depot's parking lot because it did not "affect[] the community at large," and that, even if it did, the plaintiff's trip over the pothole was not a special injury.")

In fact, a number of courts have recognized a public nuisance claim based upon the mistreatment of animals and other situations involving "some interference with the interests of the community at large" including "public morals." Restatement (Second) of Torts § 821B, cmt. b (1979). *See Pennsylvania Soc. for the Prevention of Cruelty to Animals v. Bravo Enters., Inc.*, 237 A.2d 342 (Pa. 1968) ("*PSPCA*") (acknowledging that PSPCA could assert a public nuisance claim against promoters of a bullfight);[3] *Commonwealth ex rel. Preate v. Danny's New Adam & Eve Bookstore*, 625 A.2d 119, 122 (Pa. Commw. 1993) (sexual conduct occurring on the premises of

---

[3] The *PSPCA* case ultimately held that the plaintiff could not pursue its public nuisance claim because it lacked standing, which the plaintiff had based on a statute granting its agents the right to "seize any creature which is kept or used for the purpose of fighting or baiting." *Id.* at 349. The plaintiff did not argue that it suffered an aesthetic or emotional injury as ALDF does here. Moreover, in this Court's opinion denying Farmers' Inn's motion to dismiss the Amended Complaint, the Court held that ALDF sufficiently alleged aesthetic injuries and even went a step beyond by substantiating them thorough the declarations of Kelly Bennett and Kathleen Welsch. (ECF No. 61 at 6-7.) Farmers' Inn's motion for summary judgment did not raise lack of standing as an issue; rather, it has stated that "ALDF's standing to bring a public nuisance claim is not relevant at the summary judgment stage." (ECF No. 250 at 12.) Thus, the holding of the Court that ALDF has standing remains the law of the case. Farmers' Inn's contention that "the Court considered evidence that could not have been considered when it decided Farmers' Inn's motion to dismiss the public nuisance claim" (*id.* at 8) is inaccurate.

an adult bookstore could lead to the spread of HIV and thus there was a viable claim for public nuisance to patrons of the bookstore). *See also Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018) (rejecting argument that the plaintiffs "inflicted injury upon themselves by visiting Cricket Hollow [Zoo]," holding that it "mischaracterized plaintiffs' injury, which instead stems from Cricket Hollow's inability to properly care for its animals"); *Collins v. Tri-State Zoological Park of W. Md., Inc.*, 514 F. Supp. 3d 773, 782 (D. Md. 2021) (allowing a public nuisance claim to be asserted against a private zoo when the plaintiffs averred "sufficient facts to make plausible that the Zoo's operations interfere with the public morals of the community at large and all who come in contact with the Zoo—including the Plaintiffs. This is all that is required.")

Neither *Ricchuiti* nor any other case has held that a business invitee cannot bring a public nuisance claim. On the contrary, courts have recognized a public nuisance claim arising out of the mistreatment of animals, including by visitors to zoos. Thus, it was clear error to dismiss ALDF's claim on this basis and it is consonant with justice to correct this error.

In its motion for partial summary judgment, Farmers' Inn argued that ALDF improperly attempted to raise a private cause of action under sections of the Game Code relating to menageries (58 Pa. Code Chapter 147, Subchapter O) or, in the alternative, that the public nuisance claim was barred because the Pennsylvania Game Commission ("PGC") had issued a permit to Farmers' Inn and it passed its annual inspections. In reaching its decision on this issue, the Court noted that "ALDF has not cited any decisions in which a court has recognized a private claim for public nuisance based on violations of [the Game Code] … [and] Farmers' Inn possesses a permit from PGC and the PGC conducts annual inspections of Farmers' Inn." (ECF No. 240 at 15.)

ALDF contends that this constituted error.[4] It correctly notes that it is not seeking to

_____

[4] ALDF also argues that the Court erroneously confined its claims to two sections of the Game

advance a private cause of action based on Game Code regulations. Rather, its position is based on the *PSPCA* case, in which the court stated that "[a] legislative proscription … is declarative of the public policy and is tantamount to calling the proscribed matter prejudicial to the interests of the public. Injury to the public is the essence of a public nuisance. Therefore, [defendant's] activities are properly enjoinable as being contrary to law and prejudicial to the interests of the public." 237 A.2d at 348. *See also Commonwealth v. MacDonald*, 347 A.2d 290, 303 (Pa. 1975) ("A thing may be a public nuisance because it is so declared by statute, either explicitly or implicitly. Alternatively, it may be declared a nuisance as a matter of common law if, though not prohibited by statute, it unreasonably interferes with the rights of the public"); *Feeley v. Borough of Ridley Park*, 551 A.2d 373, 375 (Pa. Commw.1988) (house with dozens of cats in uncleaned litter boxes and a feces-strewn floor "constituted a poor and unhealthy environment for cats" and was "unfit for both feline and human habitation.")

Thus, the fact that no prior case has predicated a public nuisance claim on an alleged violation of a Game Code regulation is irrelevant. Rather, alleged Game Code infractions serve as the proof that the legislature has proscribed certain acts with respect to the keeping of exotic animals, the violation of which constitutes injury to the public and represents a public nuisance. Moreover, the fact that Farmers' Inn has a permit from the PGC or that it has received satisfactory inspections from the PGC does not preclude it from being held liable for a public nuisance claim. *See Muehlieb v. City of Philadelphia*, 574 A.2d 1208, 1209 (Pa. Commw. 1990) (finding that a dog kennel was a public nuisance despite the fact that it received "satisfactory condition"

---

Code, 58 Pa. Code §§ 147.281 and 147.287, when it had cited additional sections of animal welfare regulations. In its brief in opposition to Farmers' Inn's motion for partial summary judgment, it also cited § 147.284(b), which requires adjusting conditions to the natural habitat of the wildlife if the natural climate differs from the climate of the area where the menagerie is located. (ECF No. 207 at 6.)

inspections from the Department of Agriculture).[5] To the extent that the Court's opinion suggested otherwise, it constituted clear error, and it is consonant with justice to correct this error.

Finally, ALDF argues that the Court erred by failing to consider caselaw indicating that the special injury[6] analysis is identical to Pennsylvania's prudential standing analysis, which in turn looks to federal law for guidance, and that federal law recognizes injury based upon harm to recreational and aesthetic interests. *See Funk v. Wolf*, 144 A.3d 228, 244 (Pa. Commw. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63 (1992), for the proposition that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing"), *aff'd mem.*, 158 A.3d 642 (Pa. 2017).

ALDF cites *Kuhns v. City of Allentown*, 636 F. Supp. 2d 418 (E.D. Pa. 2009). In that case, anti-abortion protestors asserted a public nuisance claim against the Allentown Women's Center based on its employees held tarps across the street and formed a human shield around pregnant women crossing the street. The plaintiffs argued that, although this "obstruction of a public highway" would block everyone who used the street, they were specially affected because the obstruction prevented pregnant women from seeing the plaintiffs' actions and literature. The court agreed, holding that the violation of the protestors' rights to publicly protest and distribute literature was "a sufficient specific injury to support plaintiffs' claim for public nuisance." *Id.* at 438. Thus, the fact that anyone who attempted to use the street would be similarly affected did not

[5] ALDF also notes that it has presented evidence that the PGC inspections should carry little weight. See ECF No. 209 ¶¶ 25, 41; ECF No. 235 ¶ 5.

[6] "In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference." Restatement (Second) of Torts § 821C(1) (1979). *See also PSPCA*, 237 A.2d at 348 ("a public nuisance may be enjoined at the behest of a private citizen or group of citizens, if the latter, either in their property or civil rights, are specifically injured by the public nuisance over and above the injury suffered by the public generally.")

preclude the plaintiffs from asserting a specific injury.

Similarly, the fact that other visitors to Farmers' Inn theoretically might be as upset as Mrs. Bennett upon viewing the treatment of the animals does not mean that her declaration cannot establish special injury. *See also Colllins*, 514 F. Supp. 3d at 781 (plaintiff, a member of PETA who visited the zoo and experienced particularly severe distress and anguish at witnessing the deplorable conditions to which the animals were subjected, properly cited aesthetic and recreational special injuries); *Animal Legal Defense Fund v. Olympic Game Farm*, Inc., 387 F. Supp. 3d 1202, 1206-07 (W.D. Wash. 2019) (ALDF members were "specially injured" by the treatment of animals at a roadside zoo because "as animal lovers and advocates, they visited the OGF for recreational purposes based on the mistaken belief that OGF was caring for exotic animals, when in fact OGF is mistreating and abusing those animals, which left ALDF's members emotionally upset and unable to return to OGF for recreational enjoyment."); *Kuehl v. Sellner*, 2021 WL 3392813, at *4 (Iowa Ct. App. Aug. 4, 2021) ("the zoo was unreasonably offensive to the senses in the inhumane manner of living of the animals.")

ALDF argues that the Court erred by concluding that it could not establish special injury based on Mrs. Bennett's declaration and that it did not discuss *Kuhns*, *Collins*, and other cases cited in its summary judgment papers. Farmers' Inn responds that ALDF cannot base its claim on a solely aesthetic injury, but that argument is unsupported, as discussed above. It also contends that *Kuhns* was decided on a motion to dismiss rather than a motion for summary judgment, but that distinction is not relevant to the issue of whether Mrs. Bennett's declaration can support a claim for public nuisance based on special injury. ALDF is correct that the Court should have addressed these cases, which support ALDF's position.

Thus, upon review, the Court concludes that it is consonant with justice to grant ALDF's

motion for reconsideration regarding the public nuisance claim. Thus, the motion for summary judgment of Farmers' Inn on this issue will be denied and the public nuisance claim alleged in Count IV of the Supplemental Amended Complaint will be reinstated.

      B.  <u>Burden of Proof on "Harass" Exception</u>

ALDF also argues that the Court erred in stating that ALDF bears the burden of proving that Farmers' Inn does not meet the ESA's captive animal exception to "harass." In the Memorandum Opinion, the Court, in discussing ALDF's motion for summary judgment with respect to the claim that Farmers' Inn violated the ESA by "taking" a scarlet macaw, ring-tailed lemurs and a black leopard, stated that "ALDF bears the burden of proof to demonstrate an ESA violation." (ECF No. 240 at 19.) The Court denied ALDF's motion because the parties had proffered competing expert opinions and other testimony and evidence regarding the adequacy of the treatment of the endangered animals at Farmers' Inn and whether they were harmed or harassed as a result. As stated in the opinion, "[b]ecause the record is replete with genuine issues of material fact, the Court cannot conclude as a matter of law that Farmers' Inn violated the ESA." (*Id.* at 20.)

The definitional section of the ESA provides that:

Harass in the definition of "take" in the Act means an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering. This definition, when applied to captive wildlife, does not include generally accepted:

(1) Animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act,

(2) Breeding procedures, or

(3) Provisions of veterinary care for confining, tranquilizing, or anesthetizing, when such practices, procedures, or provisions are not likely to result in injury to the wildlife.

50 C.F.R. § 17.3. Thus, the Act carves out an exception to the term "harass" for animal husbandry

practices that meet or exceed certain the minimum standards under the AWA.

While ALDF contends that the Court erred with respect to the burden of proof, it relies on criminal cases in which courts held that defendants bore the burden of proving an exception to a statutory obligation. This is a questionable analogy. *See United States v. Taylor*, 686 F.3d 182, 190 & n.5 (3d Cir. 2012); *U.S. ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 663 (W.D. Pa. 2014).

Farmers' Inn cites decisions that address the specific regulation at issue here and hold that "those who hold an animal in captivity can violate the ESA if they commit a taking by 'harassing' that animal, but the burden is on the plaintiffs to show that the AWA's minimum standards were not met." *Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 741 (W.D. Tex. 2017) *See also Hill v. Coggins*, 867 F.3d 499, 510 (4th Cir. 2017); *Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, 2022 WL 683212, at *8 (W.D. Wash. Mar. 8, 2022).

ALDF responds by citing *People for Ethical Treatment of Animals, Inc. v. Wildlife in Need & Wildlife in Deed, Inc.*, 2018 WL 8577966, at *4 (S.D. Ind. Feb. 8, 2018), and *Missouri Primate Foundation v. People for Ethical Treatment of Animals, Inc.*, 2018 WL 1420239, at *3 (E.D. Mo. Mar. 22, 2018). Notably, these cases held only that AWA compliance does not preclude liability under the ESA; they did not address the question of which party bears the burden of proof on the issue.

ALDF has the burden of demonstrating that Farmers' Inn's husbandry practices do not meet the minimum standards set by the AWA. Therefore, with respect to this issue, ALDF's motion for reconsideration will be denied.

### III.    Conclusion

For these reasons, ALDF's motion for reconsideration will be granted in part and denied in part. An appropriate order follows.

Dated: November 1, 2022                    BY THE COURT:

                                           /s/Patricia L. Dodge
                                           PATRICIA L. DODGE
                                           United States Magistrate Judge